A04A1523. THREATT et al. v. ROGERS.
A04A1524. ROGERS v. BUTLER.
(604 SE2d 269)

ANDREWS, Presiding Judge.

Thomas A. Threatt and James W. Threatt, Jr. made the high bid on real and personal property auctioned by the property owner, Kenny Rogers, and entered into a sales contract with Rogers by which the Threatts agreed to purchase the property for $6,342,500 and to make a ten percent earnest money payment in the amount of $634,250. The sales contract further provided that, if the Threatts failed to consummate the sale, Rogers would retain the earnest money as liquidated damages. The Threatts delivered the earnest money in the form of a $634,250 check to Felix Graham of Graham & Associates, who served as the closing attorney and escrow agent pursuant to the terms of the sales contract. However, the Threatts subsequently claimed that the sales contract improperly failed to convey certain personal property included in the auction, and they stopped payment on the check and refused to close the sale. Rogers sued the Threatts for specific performance, breach of contract, and fraud, and sought the imposition of a trust on the Threatts' assets along with the award of litigation expenses pursuant to OCGA § 13-6-11 and punitive damages. Rogers also sued the Threatts' attorney, George E. Butler II, claiming that Butler agreed to act as an escrow agent to hold a

[10] OCGA § 16-13-31 (a).
[11] See *Crenshaw v. State*, 248 Ga. App. 505, 507 (1) (546 SE2d 890) (2001).

replacement earnest money check issued by the Threatts and that he breached a fiduciary duty owed to Rogers when he failed to tender the earnest money. In response, the Threatts brought various counterclaims against Rogers.

In an order entered on December 30, 2002, the trial court granted partial summary judgment in favor of Rogers on some of the Threatts' counterclaims, and the Threatts sought interlocutory appellate review of the order. Noting that the grant of partial summary judgment in favor of Rogers was directly appealable under OCGA § 9-11-56 (h), we nevertheless entered an order granting the Threatts' application for an interlocutory appeal from the December 30, 2002 order because "[t]his Court will grant a timely application for interlocutory review if the order complained of is subject to direct appeal and the applicants have not otherwise filed a notice of appeal." *Spivey v. Hembree*, 268 Ga. App. 485, 486, n. 1 (602 SE2d 246) (2004). Pursuant to this authority, the Threatts subsequently appealed from the December 30, 2002 order granting partial summary judgment to Rogers in Case No. A04A1523. We note that none of the Threatts' enumerations of error on appeal pertains to the December 30, 2002 order; rather they address two other orders rendered in the case. Notwithstanding that none of the errors enumerated pertain to the directly appealable December 30 order from which the appeal in Case No. A04A1523 was taken, we have appellate jurisdiction pursuant to OCGA § 5-6-34 (d) to review other orders rendered in the case which may affect the proceedings and which are raised in the appeal. *Young Constr. v. Old Hickory House #3*, 210 Ga. App. 559 (436 SE2d 581) (1993); *Southeast Ceramics v. Klem*, 246 Ga. 294, 295 (271 SE2d 199) (1980). In Case No. A04A1524, Rogers cross-appeals from the trial court's grant of summary judgment in favor of Butler and from the denial of his motion for partial summary judgment against the Threatts. OCGA § 5-6-38.

## Case No. A04A1523

1. In five enumerations of error, the Threatts appeal from two orders which they assert were entered by the trial court on November 7, 2002. The Threatts' appellate brief provides selected quotes from portions of the orders without citation to the record, and notes that: "Inexplicably, the Record on Appeal contains no apparent references to the two 11/7/02 Orders that are the subject of this Appeal." The Threatts' notice of appeal simply states that: "The portions of the record encircled on the Exhibit 'C' attached hereto and by this referenced [sic] made a part hereof should be omitted from the record

on appeal." The attached exhibit "C" is a 14-page document purporting to be an "Index of Pleadings" in the case, but it contains no reference to the November 7, 2002 orders the subject of the Threatts' enumerated errors.

After searching through over 4,000 pages of the record on appeal, we find no sign of the orders that are the subject of this appeal. We agree with the statement in the Threatts' appellate brief that the absence of the orders is "inexplicable" — at least to the extent it appears appellate counsel knowingly pursued this appeal on a record that does not contain the orders claimed to be erroneous. As appellants, the Threatts bear the burden of showing affirmatively by the record that the subject orders are erroneous, and they cannot carry this burden by quoting in their brief from documents which are not in the record. *Walker v. Bd. of Regents &c. of Ga.*, 254 Ga. App. 15, 18 (561 SE2d 178) (2002).

> The burden is upon appellant[s] to ensure that [their] enumerations are supported by the record. Because [they have] not fulfilled [their] duty to see that the necessary portions of the record were transmitted to this court, we treat [these] enumeration[s] as abandoned.

*Johnson v. State*, 254 Ga. 591, 598 (331 SE2d 578) (1985). Accordingly, the judgment of the trial court is affirmed in Case No. A04A1523.

*Case No. A04A1524*

2. In his cross-appeal, Rogers claims the trial court erred by granting summary judgment in favor of Butler in its order entered on November 2, 2001. Rogers's complaint included a count seeking relief against the Threatts' attorney, Butler, which alleged that Butler acted as an escrow agent to hold earnest money paid by the Threatts in connection with the sale, and that Butler breached a fiduciary duty owed to Rogers to tender the earnest money he held in escrow. On appeal, Rogers claims that Butler "transcended the permissible role of an independent attorney" for the Threatts in connection with the sale; that he assumed the role of an escrow agent who owed a fiduciary duty to Rogers to tender the earnest money under the terms of the sales contract, and that he wrongfully "seized" the earnest money and returned it to the Threatts. The complaint seeks to recover from Butler all earnest money sums held by him as an escrow agent and seeks the award of punitive damages.

The record shows that the Threatts stopped payment on the initial earnest money check while claiming that certain personal property included in the auctioned property was improperly excluded

from the sales contract. While this dispute continued, the Threatts issued a replacement earnest money check in the amount of $634,250 which they gave to their attorney, Butler, to hold until the dispute was resolved. Butler contacted Graham, the escrow agent designated in the sales contract, and told him that his clients, the Threatts, had given him a replacement check for the earnest money. According to Graham, Butler agreed that he would "hold custody of that check pursuant to the terms of paragraph 7" of the sales contract, which provided the terms under which Graham & Associates, as the designated escrow agent, was required to hold the earnest money. Based on this assertion, Rogers contends that Butler "assumed the duties of an escrow agent" under the terms of the sales contract. Rogers also claims that Butler later admitted in writing that he assumed the fiduciary obligations of an escrow agent. However, the subsequent writing referred to by Rogers shows that Butler sent Graham a document signed by him and the Threatts confirming an agreement with Graham and stating that Butler agreed to hold the earnest money as "escrowee" and deliver the earnest money to the "escrow agent," Graham, on the condition that a resolution satisfactory to the Threatts could be reached on the personal property dispute. Butler eventually returned the earnest money to the Threatts after the parties were unable to resolve the personal property dispute and the Threatts refused to close the sale.

On these facts, we find no basis in the record for concluding that Butler held the replacement earnest money as an escrow agent with a fiduciary duty owed to deliver the money to Rogers under the terms of the sales contract. To establish the fiduciary obligations of an escrow, the person with whom the escrowed property is placed must, by mutual consent of both parties, be made the agent of both parties and clothed with authority to deliver the property to one party or the other on the happening of some future event. *Byrd v. Riggs*, 213 Ga. 593, 597 (100 SE2d 453) (1957). There is no evidence that Rogers ever agreed for Butler to act as an escrow agent to hold earnest money in connection with the sale. To the contrary, Rogers testified that he understood Graham was the escrow agent for the sale and that he never understood or agreed for any other person to act as an escrow agent. Although Rogers testified that Graham had also been hired to act as his attorney to close the sale under the terms of the contract, he said that "Mr. Graham was not in a position to negotiate for me in any terms." Accordingly, the evidence showed that Rogers did not hire Graham to act as his attorney/agent for purposes of creating an escrow different from that set forth under the terms of the contract. *Newell v. Brown*, 187 Ga. App. 9, 13 (369 SE2d 499) (1988). Moreover, even if there was some type of agreement between Graham and Butler to which the Threatts consented, the evidence shows that this

agreement was for Butler to deliver the replacement earnest money to Graham on the condition that a settlement was reached on the personal property dispute to the Threatts' satisfaction. The trial court correctly held that Butler owed no fiduciary duty to deliver the replacement earnest money.

The correctness of this holding is not altered by Rogers's additional contention that Butler acted in violation of the Code of Professional Responsibility applicable to attorneys. Although the Code regulates the conduct of attorneys, an alleged Code violation cannot provide the sole basis for a private cause of action. *Davis v. Findley*, 262 Ga. 612, 613 (422 SE2d 859) (1992). Similarly, we find no merit in the contention that Rogers relied on a promise Butler made to Graham regarding the replacement escrow money, and that, under the principle of promissory estoppel, this created a fiduciary duty for Butler to deliver the escrow money to Rogers. OCGA § 13-3-44. Even assuming Butler made a promise to deliver the escrow money under the terms of the sales contract, there is no evidence of reliance because Rogers never agreed for Butler to act as an escrow agent nor did he authorize Graham to agree on his behalf. Finally, we find no basis in the record to support claims that Butler's actions made him a "de facto" escrow agent or that he converted the earnest money by failing to deliver it to Rogers.

We find no error in the trial court's order granting summary judgment in favor of Butler on Count 6 of the complaint alleging that Butler breached a fiduciary duty to deliver the replacement earnest money to Rogers. To the extent Count 7 of the complaint, which seeks imposition of a trust over the Threatts' accounts, can also be construed as a claim against Butler for holding the replacement earnest money, the trial court properly granted summary judgment in favor of Butler on this count. It follows that the trial court did not err by denying Rogers's motion for summary judgment against Butler.

3. Rogers also cross-appeals from the trial court's order entered on January 17, 2002, which denied his motion for partial summary judgment on Count 1 of the complaint (seeking specific performance of the sales contract) and Counts 2 and 3, which alleged breach of contract and sought damages. In the motion, Rogers did not seek a ruling on the issue of damages, but sought a ruling that the Threatts were liable, as a matter of law, on the claims for specific performance and breach of contract. It is undisputed that, after Rogers filed the instant suit, he sold the subject property to another buyer so the claim for specific performance of the sales contract is now moot.[1]

---

[1] The Threatts' "Suggestion of Mootness" filed on appeal is granted to the extent it contends that the claim for specific performance is moot and is no longer an issue on appeal.

Accordingly, the sole issue is whether the trial court correctly concluded that issues of fact remain which preclude summary judgment in favor of Rogers on his claim that the Threatts breached the sales contract. We find no error in the trial court's conclusion that questions of fact remain precluding the grant of summary judgment. Although Rogers points to evidence that the Threatts breached the sales contract by refusing to close the sale, the Threatts point to evidence supporting their claims that the contract was unenforceably vague with regard to the personal property included in the sale, and was voidable because it was procured by fraud. *Cherokee Falls Investments v. Smith*, 213 Ga. App. 603, 604-605 (445 SE2d 572) (1994); OCGA § 13-5-5. Accordingly, the trial court did not err by denying Rogers's motion for partial summary judgment on the issue of liability for breach of the sales contract.

*Judgments affirmed in Case Nos. A04A1523 and A04A1524. Miller and Ellington, JJ., concur.*

DECIDED SEPTEMBER 1, 2004.

*Winburn, Lewis & Stolz, Irwin W. Stolz, Jr., George E. Butler II*, for Threatt et al.

*Hawkins & Parnell, H. Lane Young II, Ernest T. Brown*, for Butler.

*Harkleroad & Hermance, Donald R. Harkleroad, Timothy J. McGaughey*, for Rogers.

